IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-00636-PAB-SKC

ROCKY MOUNTAIN WILD, INC., a Colorado non-profit corporation,

     Plaintiff,

v.

UNITED STATES BUREAU OF LAND MANAGEMENT, a federal agency, and
UNITED STATES DEPARTMENT OF INTERIOR, a federal agency,

     Defendants.

_____

**ORDER**
_____

     This matter is before the Court on Defendants' Motion for Summary Judgment [Docket No. 36] and plaintiff's Cross Motion for Summary Judgment or in the Alternative, Leave to Carry Out Rule 56(d) Discovery [Docket No. 38]. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**I. BACKGROUND**[1]

     This action arises out of plaintiff's request for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* On October 20, 2016, plaintiff submitted a FOIA request to the Bureau of Land Management ("BLM") seeking "all records regarding the NEPA process, Mineral Leasing Act compliance, external and internal communications, and any other agency analysis related to the February 2017 offering of lease sale parcels 7795, 7797, 7798, 7799, 7801, 7802, and 7805." Docket

_____

[1]The facts stated below are undisputed unless otherwise noted.

No. 36 at 2-3, ¶ 2; *see also* Docket No. 36-1 at 17.  Plaintiff specified that its request

included communications between the "BLM and other federal, state or local agencies";

the "BLM and any members of the public"; the "BLM and any other external entity"; and

the "the local and state BLM offices."  Docket No. 36-1 at 17.  In addition, plaintiff noted

that "[r]esponsive records may be maintained in various levels of the BLM's

organizational structure, including the Tres Rios Field Office, State and Regional

Offices, and Washington D.C. Offices."  *Id.*  The FOIA request stated that the relevant

"parcels, if leased and developed, [had] the potential to negatively impact the

Endangered Species Act listed Gunnison sage-grouse."  *Id.*

On November 22, 2016, the BLM disclosed its first set of responsive records

consisting of approximately 1,191 pages, which were released in their entirety.  Docket

No. 36 at 5, ¶ 19; *see also* Docket No. 36-1 at 24.  The BLM produced a second set of

records on January 9, 2017.  Docket No. 36 at 5, ¶ 20; *see also* Docket No. 36-1 at 27.

This set consisted of 552 pages released in their entirety.  Docket No. 36 at 5, ¶ 20.

On March 7, 2017, the BLM issued its third and final installment of responsive records.

*Id.*, ¶ 21; Docket No. 36-1 at 30.  Of the 1,496 pages included in this installment, the

BLM withheld 923 pages in full and 157 pages in part.  Docket No. 36 at 5, ¶ 21.  The

BLM justified its withholding of records under Exemptions 3 and 5 of the FOIA and the

Archaeological Resources Protection Act of 1979, 16 U.S.C. § 470hh(a).

On April 17, 2017, plaintiff filed an administrative appeal of the BLM's decision.

Docket No. 36 at 6, ¶ 22.  On May 25, 2017, the FOIA Appeals Office of the

Department of the Interior ("DOI") granted plaintiff's appeal in part and released an

additional 701 pages of responsive records. *Id.*, ¶ 23. Thus, of the 3,239 pages of

responsive material identified, the BLM continued to withhold 173 pages in full and 336

in part. *Id.*, ¶ 24.

Plaintiff filed this lawsuit on March 10, 2017 seeking declaratory and injunctive

relief under the FOIA for defendants' alleged noncompliance with statutory

requirements and improper withholding of agency records. Docket No. 1. On March 5,

2018, the Court held that plaintiff lacked standing to assert its first claim for relief to the

extent it challenged defendants' failure to issue a timely final determination on plaintiff's

FOIA request. Docket No. 33 at 19. The Court dismissed that claim, as well as

plaintiff's second claim for relief, for lack of standing. *Id.* The parties subsequently

filed cross-motions for summary judgment on plaintiff's remaining claim that defendants

improperly withheld agency records in violation of the FOIA. Docket No. 36; Docket

No. 38. Plaintiff's motion alternatively requests leave to conduct discovery pursuant to

Fed. R. Civ. P. 56(d). *See* Docket No. 38 at 1. Both summary judgment motions are

fully briefed. *See* Docket Nos. 37, 43-45.

## II. REQUEST FOR DISCOVERY

The Court begins by addressing plaintiff's request for discovery pursuant to Fed.

R. Civ. P. 56(d). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified
> reasons, it cannot present facts essential to justify its opposition, the court
> may: (1) defer considering the motion or deny it; (2) allow time to obtain
> affidavits or declarations or to take discovery; or (3) issue any other
> appropriate order.

Fed. R. Civ. P. 56(d).  Plaintiff requests, as an alternative to the Court granting plaintiff's cross-motion for summary judgment, that the Court suspend briefing on the summary judgment motions and "allow Plaintiff the opportunity to propound written discovery and to take the deposition of Brian Klein, who prepared the declaration [the BLM] relies upon and Diane Fisher, the person who coordinated the BLM's FOIA response."  Docket No. 38 at 1.  In support of its request, plaintiff states that it seeks to "test both the basis and accuracy of Mr. Klein's statements with the benefit of Ms. Fisher's direct knowledge," and that such discovery is warranted because "no person involved in responding to the FOIA request, including Ms. Fisher, provided a declaration."  *Id.* at 3.

The Court finds that plaintiff has failed to substantiate its request for discovery. As discussed in more detail below, an agency is not required to submit a declaration from a person directly involved in a FOIA search to sustain its burden on summary judgment.  *See Wisdom v. U.S. Trustee Program*, 232 F. Supp. 3d 97, 115 (D.D.C. 2017).  And plaintiff has not otherwise shown – by affidavit, declaration, or any other means – that, "for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).

To satisfy its burden under Rule 56(d), plaintiff was required to submit a declaration or affidavit "(1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment."  *Cerveny v. Aventis,*

*Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017).  Not only has plaintiff failed to submit the requisite declaration or affidavit – a sufficient basis, standing alone, to deny plaintiff's Rule 56(d) request, *see Handy v. City of Sheridan*, 636 F. App'x 728, 735 (10th Cir. 2016) (unpublished) (noting that an affidavit is a "separate requirement" of Rule 56(d) "that ensures that the party is invoking the protections of Rule 56(d) in good faith" (internal quotation marks, brackets, and ellipsis omitted)); *Cerveny*, 855 F.3d at 1110 (noting that, to the extent the plaintiffs' "summary judgment response arguably contain[ed] the information required in Rule 56(d)," the court was not permitted to "look beyond the affidavit in considering a Rule 56(d) request") – but plaintiff also has not made an effort to describe, with any specificity, the facts plaintiff seeks to discovery, plaintiff's previous efforts to obtain those facts, and how the facts are essential to rebutting defendants' summary judgment motion.  *See Cerveny*, 855 F.3d at 1110; *see also Gutierrez v. Cobos*, 841 F.3d 895, 909 (10th Cir. 2016) (finding no abuse of discretion in district court's denial of Rule 56(d) motion where, although the motion requested information "broadly relevant" to the defendants' qualified immunity defense, it "did not explain *how* specific information was *essential* to [the plaintiffs'] summary judgment opposition"); *Handy*, 636 F. App'x at 735 (stating, with respect to a party's Rule 56(d) burden, that "mere assertions that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable do not suffice" (internal bracket omitted) (quoting *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 833 (10th Cir. 1986)).  As a result, plaintiff's request for Rule 56(d) discovery will be denied.

## III.  SUMMARY JUDGMENT

### A.  Legal Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings,

but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

"In general, FOIA request cases are resolved on summary judgment." *World Publ'g Co. v. U.S. Dep't of Justice*, 672 F.3d 825, 832 (10th Cir. 2012); *Judicial Watch, Inc. v. U.S. Dep't of Housing & Urban Dev.*, 20 F. Supp. 3d 247, 253 (D.D.C. 2014) ("FOIA cases typically and appropriately are decided on motions for summary judgment." (internal quotation marks omitted)). An agency is entitled to summary judgment if it shows that "it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Id.* (internal quotation marks omitted); *see also Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 138 F. Supp. 3d 1216, 1220 (D. Colo. 2015) ("A FOIA defendant may prevail on a motion for summary judgment if it proves that the documents within the FOIA request have been produced or fall within a statutory exemption.").

## B. ANALYSIS

FOIA was passed in 1966 "to provide a public right of access, enforceable in federal court, to agency records." *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1225 (10th Cir. 2007). To achieve this purpose, FOIA confers on federal courts

jurisdiction to review *de novo* an agency's withholding of records and to "order the production of any agency records improperly withheld."  5 U.S.C. § 552(a)(4)(B). Although an agency must generally produce records responsive to a FOIA request, "Congress recognized that disclosure of certain classes of documents could harm legitimate government interests."  *Trentadue*, 501 F.3d at 1225-26.  Accordingly, FOIA contains nine specific exemptions allowing agencies to withhold otherwise responsive documents.  *See id.* at 1226 (citing 5 U.S.C. § 552(b)).

"[A] FOIA requester may challenge the adequacy of the agency's search for responsive records, the adequacy of the agency's application of FOIA exemptions to his or her request, or both."  *Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 34 (D.D.C. 2017) (internal quotation marks omitted).  A court's review of an agency's decision to withhold records is guided by two principles: first, "FOIA is to be broadly construed in favor of disclosure"; second, FOIA's "exemptions are to be narrowly circumscribed."  *Trentadue*, 501 F.3d at 1226.  "The federal agency resisting disclosure bears the burden of justifying withholding."  *Id.*

In this lawsuit, plaintiff challenges both the adequacy of BLM's search for records and the application of Exemption 5 to justify the withholding of information responsive to plaintiff's FOIA request.  *See* Docket No. 37 at 1.

### 1. Adequacy of Search

Plaintiff argues that the BLM's search for records was "unreasonably narrow and failed to uncover many responsive documents."  Docket No. 37 at 9.  Under FOIA, an agency's search for records "be reasonable in scope and intensity."  *Trentadue v.*

*F.B.I.*, 572 F.3d 794, 797 (10th Cir. 2009).  "[T]he focal point of the judicial inquiry is the agency's search process, not the outcome of its search." *Id.* at 797.  Whether an agency's search was reasonable turns on the "circumstances of the case" and "the likelihood that [the search] will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives." *Id.* at 797-98.

While an agency need not prove that it "search[ed] every record system" or that "no other potentially responsive documents might exist," *Rocky Mountain Wild, Inc.*, 138 F. Supp. 3d at 1221, the agency must demonstrate that "it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reporters Committee for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 402 (D.C. Cir. 2017).  To satisfy this burden, an agency may rely on affidavits or declarations from agency officials that "are relatively detailed, nonconclusory, and submitted in good faith." *Info. Network For Responsible Mining (Inform) v. Bureau of Land Mgmt.*, 611 F. Supp. 2d 1178, 1184 (D. Colo. 2009) (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)). In other words, the affidavits or declarations must generally "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search." *Al-Turki v. Dep't of Justice*, 175 F. Supp. 3d 1153, 1211 (D. Colo. 2016) (quoting *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 362 (4th Cir. 2009)).  Reasonably detailed "affidavits or

declarations are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Sandy v. Exec. Office for U.S. Attorneys*, 170 F. Supp. 3d 186, 189 (D.D.C. 2016) (internal quotation marks omitted).  However, summary judgment is inappropriate "if the record leaves substantial doubt as to the sufficiency of the search."  *Id.* (internal quotation marks omitted).

In this case, defendants have provided: (1) a declaration and supplemental declaration from Brian Klein, the Supervisory Records Administrator and acting FOIA and Privacy Act Officer in the Colorado State Office of the BLM, attesting to the scope of the BLM's search for records in response to plaintiff's FOIA request, *see* Docket Nos. 36-1, 43-1; and (2) a declaration [Docket No. 43-2] from Connie Clementson, Field Manager for the BLM's Tres Rios Field Office in Dolores, Colorado, regarding the relationship between the agency's National Environmental Policy Act ("NEPA") process and the Tres Rios Field Office's Resource Management Plan ("RMP").  *See* Docket No. 43-2.[2]  Defendants argue these documents are sufficient to show that the BLM "conducted a reasonable search for documents responsive to Plaintiff's [FOIA] request."  Docket No. 36 at 1.  Plaintiff opposes defendants' summary judgment motion

---

[2]Although defendants submitted the supplemental declarations from Mr. Klein and Ms. Clementson in conjunction with their reply brief, plaintiff has not objected to the declaration or requested leave to file a surreply.  The Court will therefore consider the supplemental declaration in resolving defendants' summary judgment motion.  *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (district court did not abuse its discretion by considering summary judgment exhibits attached to the defendant's summary judgment reply brief where the plaintiff "had plenty of opportunity to seek leave of the court to file a surreply but never attempted to do so").

and moves for summary judgment in his favor on the adequacy of the BLM's FOIA

search, arguing that (1) Mr. Klein's declaration does not constitute admissible evidence

demonstrating a FOIA-compliant search, Docket No. 38 at 5; (2) the BLM improperly

failed to search for and disclose records related to the agency's past NEPA analysis,

Docket No. 37 at 9-11, 14; (3) there is no evidence the BLM attempted to identify

personnel in other offices who may have possessed responsive documents, *id.* at 12;

(4) the BLM failed to use search terms that would have identified responsive records,

*id.* at 13-14; and (5) the BLM improperly failed to set a temporal scope for its records

search.  *Id.* at 14-15.

### a. Sufficiency of Klein Declarations

Plaintiff challenges the sufficiency of the Klein declaration on two grounds.  First,

it suggests that the declaration does not satisfy Fed. R. Civ. P. 56(c)'s personal

knowledge requirement because Mr. Klein was "not involved in BLM searches that

sought records responsive to [plaintiff's] FOIA request."  Docket No. 38 at 2-3.  Second,

it contends that the declaration does not provide sufficient detail regarding the methods

used by agency employees to search for records or the "record systems actually

searched."  Docket No. 37 at 12.

Under Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or

oppose a motion [for summary judgment] must be made on personal knowledge, set out

facts that would be admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters stated."  Courts have found this standard satisfied in

the FOIA context where the affiant "attests to his personal knowledge of the procedures

used in handling a FOIA request and his familiarity with the documents in question."

*Wisdom*, 232 F. Supp. 3d at 115 (internal quotation marks and brackets omitted);

*Williams v. F.B.I.*, 2014 WL 1320262, at *8 (D. Utah. Mar. 31, 2014).

While the person in charge of coordinating a search for records is typically the

"most appropriate person to provide a comprehensive affidavit," *SafeCard Servs. Inc. v.*

*S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *Carney v. U.S. Dep't of Justice*, 19 F.3d

807, 814 (2d Cir. 1994) ("An affidavit from an agency employee responsible for

supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need

for the agency to supply affidavits from each individual who participated in the actual

search."); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 231,

251 (D. Conn. 2012) (noting that "[a] declaration from a person who actually supervised

the [FOIA] search]" is "preferable"), courts have permitted affidavits from persons who

were neither involved in the FOIA search nor directly responsible for its coordination.

*See, e.g.*, *Wisdom*, 232 F. Supp. at 115; *Serv. Women's Action Network v. Dep't of*

*Defense*, 888 F. Supp. 2d at 251; *see also Davis v. U.S. Dep't of Homeland Sec.*, 2013

WL 3288418, at *7 (E.D.N.Y. June 27, 2013) (recognizing that "[a]t least one court . . .

has interpreted [*Carney*] to require that the affidavit be submitted by an official involved

in the specific search for the documents at issue in the FOIA request," but noting that

district courts in the Second and D.C. Circuits have since "found an official with broader

supervisory authority who is not necessarily involved in the specific search for records

at issue to be capable of submitting a sufficient declaration").  As defendants point out,

*Wisdom* rejected an argument nearly identical to the one raised in this case.  In

*Wisdom*, the plaintiff asserted that declarations provided by an agency employee regarding the agency's search for records were not based on personal knowledge because the employee did not assume FOIA compliance duties "until well after those tasks were largely completed for the FOIA requests at issue." *Wisdom*, 232 F. Supp. 3d at 115.  After noting that the plaintiff's argument "miscontrue[d] what Rule 56 mandates in the FOIA context," the district court held that the personal knowledge requirement was satisfied because the employee was responsible for the agency's compliance with FOIA and had "based his conclusions on information provided to him by other agency employees and his own review of agency records." *Id.*  Likewise, in *Service Women's Action Network*, the court found that a declaration from "an attenuated supervisor" of the agency employee who had actually supervised the FOIA search was permissible under Rule 56 because the declarant had provided "a thorough description of the search and of the reasons why certain actions were taken."  888 F. Supp. 2d at 251; *accord Davis*, 2013 WL 3288418, at *8 (holding that declaration was sufficient under Rule 56, notwithstanding employee's failure to describe her role in the specific FOIA search at issue, because the employee's "supervisory position, combined with the thorough description of the search and her familiarity with TSA search procedures, constitute[d] sufficient personal knowledge").  The Court finds these cases persuasive.

Mr. Klein states in his declaration that he is the acting FOIA officer in the Colorado State Office of the BLM and responsible for "implement[ing] the FOIA program for the BLM's . . . Colorado State, District, and Field Offices."  Docket No. 36-1

at 2-3, ¶¶ 1, 3.  His specific duties include, among other things, "coordinat[ing] record searches with agency employees; answer[ing] questions about the scope of FOIA requests; work[ing] with FOIA requesters to clarify or narrow the scope of their requests; [and] determin[ing] if any FOIA exemptions apply to responsive records." *Id.* at 3, ¶ 4. Mr. Klein avers that he is "familiar with the procedures followed in responding to FOIA requests made to the BLM," *id.* at 3, ¶ 5, and that his declaration is based on a "review of the official BLM FOIA files and records of the BLM FOIA Program, [his] personal knowledge, and/or information acquired by [him] through the performance of [his] official duties." *Id.* at 4, ¶ 6.  Mr. Klein's supplemental declaration states that the information contained therein "was obtained through the course and scope of [his] official duties as Acting FOIA Officer, including [his] review of official records, [his] knowledge of BLM Colorado State Office's FOIA processes and procedures, and [his] access to the individuals directly involved in the search."  Docket No. 43-1 at 3, ¶ 6. Based on these statements, the Court finds Rule 56's personal knowledge requirement satisfied.  *See Wisdom*, 232 F. Supp. 3d at 115; *Davis*, 2013 WL 3288418, at *8; *Serv. Women's Action Network*, 888 F. Supp. 2d at 251; *compare The Few, the Proud, the Forgotten v. U.S. Dep't of Veterans Affairs*, 254 F. Supp. 3d 341, 361 (D. Conn. 2017) (noting fact-specific nature of inquiry and holding that declarations of employees who were not responsible for supervising FOIA search failed personal knowledge requirement because they "provide[d] few details about the searches in question").[3]

---

[3]Consistent with this holding, the Court finds no merit to plaintiff's related argument that "Mr. Klein's declaration is little more than a series of hearsay statements."  Docket No. 38 at 3.  Because courts routinely allow declarations from

Mr. Klein's declarations also provide adequate detail regarding the search methods used by BLM employees in responding to plaintiff's FOIA request. As stated above, an agency may satisfy its burden on summary judgment by submitting "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Al-Turki*, 175 F. Supp. 3d at 1211. By comparison, an affidavit is insufficient if it contains "no information about the search strategies of the agency components charged with responding to a FOIA request." *Reporters Comm. for Freedom of Press v. F.B.I.*, 877 F.3d 399, 404 (D.C. Cir. 2017) (internal quotation marks and brackets omitted); *see also, e.g.*, *Aguiar v. Drug Enforcement Admin.*, 865 F.3d 730, 738 (D.C. Cir. 2017) (finding declarations inadequate where they "explain[ed] how [the DEA

---

agency employees not directly involved in a search for records, *see Carney*, 19 F.3d at 814 ("there is no need for the agency to supply affidavits from each individual who participated in the actual search"), hearsay is generally permitted. *See Allen v. Fed. Bureau of Prisons*, 263 F. Supp. 3d 236, 242 (D.D.C. 2017) ("Declarations containing hearsay in recounting searches for documents are generally acceptable in FOIA cases." (internal quotation marks and bracket omitted)). *Herrick v. Garvey*, 298 F.3d 1184 (10th Cir. 2002), does not support a different conclusion. There, the Tenth Circuit held that a district court opinion, which the plaintiff had relied upon to demonstrate ownership of certain documents withheld by the Federal Aviation Administration under FOIA's trade secrets exemption, constituted inadmissible hearsay. *Herrick*, 298 F.3d at 1191-92. The Court did not address the propriety of hearsay in agency FOIA declarations. *See id.* Plaintiff's reliance on *Epic Systems, Corp. v. Lewis*, 138 S. Ct. 1612 (2018), for the proposition that the Court should accord less deference to Mr. Klein's declaration, *see* Docket No. 38 at 3-4, is also misplaced. *Epic Systems* involved the issue of *Chevron* deference, *see* 138 S. Ct. at 1629 (holding that National Labor Relations Board's interpretation of conflicting statutes was not entitled to *Chevron* deference), not the question of whether an agency declaration suffices to demonstrate a reasonable search for records under the FOIA.

office] found the two case files, but not how it searched within those files"); *DeBrew v.*
*Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015) (finding declaration insufficiently detailed
where it failed to describe the search terms used or the type of search performed);
*Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 39 (D.D.C. 2017) (expressing
doubts as to adequacy of FOIA search where the agency's affidavit failed to disclose
the search terms used to search non-email electronic files, the specific databases
searched, or the approach used to "conduct manual searches of the physical files"
(emphasis omitted)).

Plaintiff contends that Mr. Klein's declaration is inadequate because it does not
disclose the methods used to search the paper and electronic files, the search terms
used for the electronic files, or the record systems actually searched.  Docket no. 37 at
12.  The Court disagrees.  In his supplemental declaration, Mr. Klein provides detailed
information regarding the searches conducted by the six BLM employees identified as
likely to have documents responsive to plaintiff's FOIA request.  The employees were
equally divided between two offices – the Tres Rios Field Office and the Colorado State
Office Branch of Fluid Minerals.  *See* Docket No. 36 at 3, ¶¶ 4-5; Docket No. 36-1 at 8-
9, ¶¶ 22-23.  Mr. Klein states that Ryan Joyner, who "took the lead on coordinating the
Tres Rios Office's response to the FOIA request," Docket No. 43-1 at 4, ¶ 13, searched
the following files:

> (1) a shared folder dedicated to the February/March 2017 lease sale,
> where each member of the leasing team saved documents relating to this
> lease sale; (2) a dedicated email folder containing correspondence
> relating to the lease sale; and (3) any hard-documents relating to the
> lease sale that had not yet been scanned into the computer system.

*Id.* at 5, ¶ 14.  Rebecca Baca, the employee in charge of coordinating the FOIA

response for the Colorado State Office Branch of Fluid Minerals, likewise searched a

"centralized file dedicated to the February/March 2017 lease sale" and an "unofficial

correspondence" folder containing "communications about the lease sale among

members of the lease sale team or with the Tres Rios Field Office." *Id.* at 7, ¶¶ 22-24.

Mr. Klein states that each member of the lease sale team in the Colorado State Office

Branch of Fluid Minerals was also asked to "identify and provide any additional

documents in their personal hard-copy or electronic filing systems that were not already

located in the centralized folder." *Id.* at 7-8, ¶ 26.  Finally, all six employees identified

as likely to have responsive documents in the Tres Rios and Colorado State Branch

offices searched their own email inboxes for references to the February 2017 oil and

gas lease sale or "any of the lease sale numbers at issue." *Id.* at 5, 7-8, ¶¶ 15, 25, 29.

Mr. Klein's declaration states in summary that the employees "conducted a complete

search" of "all sources within their respective locations/units likely to house responsive

records."  Docket No. 36-1 at 10, ¶ 26.

While Mr. Klein's declarations lack certain details regarding the search process

– for example, Mr. Klein fails to explain how Mr. Joyner conducted his search of the

physical files that had not yet been scanned into the computer system, or how the

employees in the Colorado State Office went about searching their personal hard-copy

and electronic filing systems for documents not contained in the centralized folder – the

Court finds the information provided sufficiently detailed to "afford a FOIA requester an

17

opportunity to challenge the adequacy of the search and to allow the [Court] to determine if the search was adequate in order to grant summary judgment." *Oglesby*, 920 F.2d at 68; *see Roe v. Comm'r of Internal Revenue* Serv., No. 12-cv-02344-CMA-MJW, 2014 WL 252102, at *2 (D. Colo. Jan. 22, 2014) (finding affidavit describing how affiant "directed numerous other employees located at various IRS offices . . . to use specific strategies designed to obtain the correct records for Plaintiff" sufficient to support summary judgment in favor of the agency even though "each of the employees involved in the search did not document the step-by-step process they went through in their individual searches"); *compare Reporters Comm. for Freedom of Press*, 877 F.3d at 404 (finding declarations insufficiently detailed where they were "utterly silent as to which files or record systems were examined in connection with the targeted searches and how any such searches were conducted, including, where relevant, which search terms were used to hunt within electronically stored materials"); *DeBrew*, 792 F.3d at 122 (finding declaration inadequate where it specified the employees tasked with the FOIA search, why they were chosen, and the results of the search, but failed to disclose the search terms used by the agency or the type of search performed).

### b. Documents Related to Underlying NEPA Process

Plaintiff also challenges the reasonableness of the BLM's search on the ground that it excluded records relating to the NEPA process underlying the Determination of NEPA Adequacy ("DNA") for the February/March 2017 lease sale. *See* Docket No. 37 at 9, 10-11, 14 (citing 41 employees listed in Final Environmental Impact Statement ("FEIS"), agency analysis regarding the Endangered Species Act consultation, and

"records related to the analysis contained within the Tres Rios [Resource Management Plan] and related Biological Opinion").[4]

"The general rule under FOIA is that a person is entitled to copies of a federal agency's records upon making a request that reasonably describes such records." *Trentadue*, 572 F.3d at 796; *see also* 5 U.S.C. § 552(a)(3)(A) (stating that "each agency, upon any request for records which . . . reasonably describes such records . . . shall make the records promptly available to any person"); 43 C.F.R. § 2.5(a) (stating that persons requesting information from the Department of the Interior "must reasonably describe the records sought," which requires providing "sufficient detail to enable bureau personnel familiar with the subject matter of the request to locate the records with a reasonable amount of effort"). An "agency responding to a FOIA request has an obligation . . . to construe [the] request liberally." *Middle East Forum v. U.S. Dep't of Treasury*, 317 F. Supp. 3d 257, 263 (D.D.C. 2018) (internal quotation marks omitted); *see also Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985) (stating that an agency is "not to read [a FOIA] request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester"). On the other hand, "[i]t is the requester's responsibility to frame requests with sufficient particularity," *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 150 (D.D.C. 2010), *aff'd*, 2010 WL 5479580 (D.C. Cir. 2010) (unpublished), and an agency is permitted to "limit the scope of an ambiguous

_____

[4]Plaintiff also contends that the agency's search failed to include employees who participated directly in the lease sale. *See* Docket No. 37 at 10. This argument will be addressed in the next section.

request as long as the narrowed scope is a reasonable interpretation of what the

request seeks." *Id.* at 154.

In this case, plaintiff requested disclosure of

> all records regarding the NEPA process, Mineral Leasing Act compliance, external and internal communications, and any other agency analysis related to the February 2017 offering of lease sale parcels 7795, 7797, 7798, 7799, 7801, 7802, and 7805.

Docket No. 36-1 at 17.  Plaintiff contends that this request triggered the BLM's duty to

search for records "related to the analysis contained within the Tres Rios [Resource

Management Plan ("RMP")] and related Biological Opinion."  Docket No. 37 at 14.[5]

Specifically, plaintiff argues that, because the DNA for the February 2017 lease sale

relied on the RMP, the BLM was obligated to include records related to the RMP in its

FOIA search.  *See* Docket No. 37 at 6,10; Docket No. 37-1 at 4 (DNA noting that the

February 2017 lease sale was "in compliance with" with existing land use plans

because the lease parcels were "within the areas identified as open to leasing" in the

RMP); *see also Friends of Animals v. Bureau of Land Mgmt.*, 2018 WL 1612836, at *9

---

[5]Connie Clementson explains in her declaration that the "Tres Rios Field Office RMP serves as the primary guide to management of Tres Rios Field Office Lands" by laying "out long-term direction and guidance for the management of resources" and "determining which lands are open for oil and gas leasing."  Docket No. 43-2 at 3, ¶ 4. The RMP "encompasses the analysis within a Final Environmental Impact Statement as well as a Section 7 Consultation under the Endangered Species Act (ESA)."  *Id.*  The "Biological Opinion" referenced in plaintiff's response appears to be related to the BLM's Section 7 Consultation.  *See* Docket No. 37 at 11 & n.6 (discussing March 2014 "Conference Opinion" from ESA consultation, which was "converted into a Biological Opinion in December 2014"); *see also* Docket No. 37-6 (stating that the Fish and Wildlife Service issued a conference opinion regarding the Gunnison Sage-Grouse in March 2014 and that the RMP was amended shortly thereafter to list the Gunnison Sage-Grouse as threatened under the ESA).

(D. Or. Apr. 2, 2018) (explaining that a DNA is "an administrative convenience created by the BLM," which "confirms that an action is adequately analyzed in existing NEPA document(s) and is in conformance with the applicable land use plan" (internal quotation marks and brackets omitted)).  The Court disagrees.

Plaintiff requested records regarding the "NEPA process . . . *related to the February 2017 offering* of lease sale parcels."  Docket No. 36-1 at 17 (emphasis added).  Defendants have submitted a declaration from Ms. Clementson's explaining that, "[w]hen there is a current (within 5 years) RMP in place," as was the situation here, "the NEPA process for the offering of a particular lease sale parcel primarily encompasses" the DNA.  Docket No. 43-2 at 3-4, ¶ 7.[6]  Ms. Clementson further states that the "site-specific NEPA process for the offering of particular lease sale parcels" – in this case, the DNA – "is not the same" as the RMP, and that it would have been difficult to search for RMP records related to the February 2017 lease sale because the RMP process involved a much larger geographical area and "numerous resources bearing no relationship to oil and gas."  *Id.* at 4-5, ¶¶ 8, 11.

Given Ms. Clementson's explanation, the plain language of the FOIA request – limiting the search to records "related to the February 2017 offering," *id.* at 3,¶ 6, – and its lack of any reference to the RMP, the Court finds that the BLM reasonably

---

[6]Ms. Clementson's declaration is not inconsistent with the regulatory definition of "NEPA process" as "all measures necessary for compliance with the requirements of section 2 and title I of NEPA." 40 C.F.R. § 1508.21.  While this definition is broad, it does not answer the question whether the BLM could have reasonably interpreted the phrase "NEPA process . . . *related to* the February 2017 offering" as referring to measures taken specifically in connection with that offering, even if the RMP was a necessary precondition of the DNA.

interpreted plaintiff's request as excluding RMP-tier NEPA records.  *See McClanahan v. Dep't of Justice*, 712 F. App'x 6, 8 (D.C. Cir. 2018) (unpublished) (holding that the FBI reasonably construed the plaintiff's FOIA request to include only "documents about the FBI's *investigation* into his possession of classified information, not 'documents about the classified information itself'"); *Wilson*, 730 F. Supp. 2d at 155 (holding that agency reasonably interpreted request for "*all* EEO complaints . . . held in the Office of Civil Rights/EEO" as being limited to "formal complaints, instead of informal records such as counseling logs"); *Mogenhan v. Dep't of Homeland Sec.*, 2007 WL 2007502, at *3 (D.D.C. July 10, 2007) (holding that agency "reasonably construed the plaintiff's questions pertaining to the 'investigative file' as a request for the 'investigative file' itself," rather than for related employment files, where the plaintiff made no reference to employment files in her request).  Had plaintiff intended to make a broader request for all NEPA analysis concerning the parcels at issue, it could have done so.  Here, however, the BLM was not required to look beyond the plain language of plaintiff's FOIA request for records related to the RMP.  *See Mogenhan*, 2007 WL 2007502, at *3 (noting that "an agency must read a FOIA request as it is drafted – not as the requester might wish it was drafted").

### c.  Other Employees Likely to Have Responsive Records

In addition to arguing that defendants' search excluded individuals involved with the underlying RMP and related ESA consultation, plaintiff contends that the BLM (1) improperly excluded participants in the DNA for the February/March 2017 lease sale, Docket No. 37 at 10, and (2) failed to take steps to identify personnel in the

22

Washington, D.C. office likely to have responsive records.  *Id.* at 12.

FOIA's standard of "[r]easonableness does not require [an agency] to search every record system or to demonstrate that no other potentially responsive documents might exist."  *Rocky Mountain Wild, Inc.*, 138 F. Supp. 3d at 1221.  However, an agency must "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Id.* (quoting *Oglesby*, 920 F.2d at 68).  Consistent with this requirement, an agency must forward a FOIA request to another office if the agency knows that office "has or is likely to have responsive documents."  *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 121 (D.D.C. 2005) (quoting 43 C.F.R. § 2.22(a)(1)).  An agency's failure to pursue "clear leads" indicating that other individuals or offices should be searched renders a search inadequate.  *See Coleman v. Drug Enforcement Admin.*, 134 F. Supp. 3d 294, 301-02 (D.D.C. 2015).  On the other hand, "[s]peculative claims about the existence of additional documents are insufficient to rebut the presumption of good faith."  *Id.* at 301 (internal quotation marks omitted).

In arguing that the BLM's search failed to include employees who participated in the February/March 2017 lease sale, plaintiff points to the DNA, which identifies sixteen specialists who were consulted about the lease sale.  *See* Docket No. 37 at 10; Docket No. 37-1 at 6-7.  It is undisputed that only one of those individuals, Ryan Joyner, was asked to search for records responsive to plaintiff's FOIA request.  *See* Docket No. 36 at 3, ¶ 7.

Defendants argue that the BLM's search was adequate because the specialists identified in the DNA were unlikely to have additional documents related to the February/March 2017 lease sale.  Docket No. 43 at 8.  Defendants rely on Mr. Klein's supplemental declaration, which explains that, "[a]s a general practice, the[] specialists provided any documents reflecting or supporting their assessment of the lease sale at issue to Mr. Joyner during the course of the lease sale preparations on an ongoing basis, so that he could add these materials to the shared file."  Docket No. 43-1 at 5-6, ¶ 17.  Mr. Klein further states that any correspondence by these specialists regarding the lease sale would, "as a matter of course," have "included at least one member of the Tres Rios Field Office leasing team," meaning that the communications would have been captured in the search performed by the Tres Rios Field office.  *Id.*  Finally, Mr. Joyner asked "several specialists, including Nathaniel West, . . . whether they had documents the Tres Rios searches had not already captured."  *Id.* at 6, ¶ 18.  Although Mr. Joyner did not remember whether the specialists had additional documents, Mr. Klein states that any documents produced would have been added to the agency's FOIA response.  *Id.*

Given Mr. Klein's explanation, the Court finds the list of specialists in the DNA insufficient to show that the BLM's search for records was unreasonable.  *See Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 11 (D.D.C. 2004) (finding agency had "no reason to believe that [the employee] possessed any responsive [ethics-related] documents" based in part on the fact that she "routinely returned" relevant materials to an employee who participated in the FOIA search);

*compare Info. Network for Responsible Mining (Inform) v. Bureau of Land Mgmt.*, 611

F. Supp. 2d 1178, 1185 (D. Colo. 2009) (finding the search for records inadequate

where the agency merely asserted, "in conclusory terms and without any accompanying

detail or explanation" that all the responsive documents created by the twenty-four BLM

employees involved in the agency action were located in the single file searched by the

BLM).  Plaintiff asserts in its cross-motion for summary judgment that "[t]here is no

evidence that any 'specialist' carried out a search."  Docket No. 45 at 6.  However, this

fact is implicit in Mr. Klein's statement that Mr. Joyner asked the specialists whether

"they had documents the Tres Rios searches had not already captured."  Docket No.

43-1 at 6, ¶ 18.  More importantly, Mr. Klein has explained that the specialists were

unlikely to have additional responsive records because they would have provided any

documents related to the lease sale to Mr. Joyner on an ongoing basis.  Plaintiff's

speculation that the specialists may not have actually conducted a search for records is

therefore insufficient to create a genuine issue of fact as to the reasonableness of the

BLM's FOIA response.  *See Sandy*, 170 F. Supp. 3d at 189.

The Court reaches a different conclusion as to the BLM's failure to involve the

agency's Washington, D.C. office in the search for records.  Plaintiff's FOIA request

specifically noted that "[r]esponsive records may be maintained in various levels of the

BLM's organizational structure, including the . . . Washington, D.C. Office[]."  Docket

No. 36-1 at 17.  Yet, as plaintiff points out, nothing in Mr. Klein's initial declaration

describes the agency's efforts to determine whether employees in the national office

were likely to possess records related to the February/March 2017 lease sale.  *See*

Docket No. 37 at 12; Docket No. 36-1 at 8-9, ¶ 22 (stating only that the FOIA officer determined the Tres Rios Field Office and the Colorado State Office Branch of Fluid Minerals to be the offices likely to possess responsive records), *id*. at 9, ¶ 24 (stating that the FOIA coordinator in each office was directed to "identify any other *field, district, or state office* employees who might have responsive records").  Mr. Klein states in his supplemental declaration that the BLM's Washington, D.C. office is unlikely to possess responsive documents because, "[w]ith few exceptions, decisions on lease sales are made at the state level."  Docket No. 43-1 at 9, ¶ 33.[7]  However, there is nothing in the record indicating whether the February/March 2017 lease sale constituted one of those exceptions, and plaintiff has submitted evidence showing that the D.C. office has participated in other recent lease sales in the West.  *See* Docket No. 37 at 6, ¶ 2; Docket No. 37-3.

Because the BLM has not presented any evidence showing that it took steps to determine whether employees in the Washington, D.C. office possess documents related to the February/March 2017 lease sale, it has failed to demonstrate that it conducted a reasonable search for responsive records.  *See Rocky Mountain Wild*, *Inc.*, 138 F. Supp. 3d at 1218, 1222 (finding search for records "pertaining to the development and construction of the Village at Wolf Creek Access Project"

---

[7]Defendants also contend that the BLM "did not *separately* search individuals in Washington, D.C. for responsive records" because the "BLM custodians' *own* searches would have captured relevant correspondence with persons in Washington, D.C." Docket No. 43 at 6, ¶ 1.  As is clear from this explanation, however, the custodians' searches would have only captured *correspondence* with the Washington, D.C. office, not other types of records responsive to plaintiff's request.

unreasonable where the Forest Service "stated that the Washington, D.C. office 'had minimal involvement' with the Wolf Creek Project, but it did not participate in the search effort"); *Info. Network for Responsible Mining (Inform)*, 611 F. Supp. 2d at 1185 (finding declarations insufficient to support agency's summary judgment burden where there was "no indication that the agency made any effort to determine whether BLM personnel in any other office, such as the office of the BLM's Colorado State Director or the BLM's national office, participated in the agency's decision-making regarding the PEA and DOE's Uranium Leasing Program and thus may have [had] responsive records in their control or possession").

### d. Search Terms

Plaintiff also takes issue with the search terms used by the BLM.  *See* Docket No. 37 at 12-14.  According to Mr. Klein's declarations, the six employees deemed likely to have responsive documents searched their email inboxes for "references to the February 2017 oil and gas lease sale" and "any of the [four-digit] lease sale numbers at issue."  Docket No. 43-1 at 8, ¶ 29; *see also* Docket No. 36-1 at 10, ¶ 27.  Plaintiff contends that the BLM's search was inadequate because (1) the lease sale was moved to March 2017 on December 29, 2016 and thus would have been referred to as the "March 2017 lease sale" after that date, Docket No. 37 at 13; (2) "at some point prior to the release of the Lease Sale Notice on November 10, 2016, the subject parcels were reclassified with [five-digit] serial numbers that no longer corresponded to the numbers used in the FOIA search," *id.*; (3) the BLM failed to "include any search term which would have identified documents related to the Gunnison sage-grouse," *id.*; and (4) the

27

BLM failed to use other "geographically specific terms" that would have uncovered documents related to the land parcels at issue.  *Id.* at 14.

"In general, federal agencies have discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA request."  *Coffey v. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1, 9 (D.D.C. 2017) (internal quotation marks and brackets omitted).  As long as an agency's "search terms are reasonably calculated to lead to responsive documents," courts "should not micro manage the agency's search."  *Id.* (internal quotation marks omitted).

The Court finds that the search terms used by the BLM – namely, "February 2017 lease sale" and the four-digit parcel numbers – were reasonably calculated to uncover responsive records.  Mr. Klein explains in his supplemental declaration that searching for "Gunnison sage-grouse" or other geographic designations, such as "San Miguel population," "Dry Creek Basin SWA," "County Road 31U," or "Miramonte area" would have been "both under- and over-inclusive" because they "would not have returned many results relating to the lease sale at issue, and would have returned a large number of communications wholly unrelated to the lease sale."  Docket No. 43–1 at 8-9, ¶ 31.[8]  As to the five-digit serial numbers, "files related to preparation for a lease

---

[8]Plaintiff appears to suggest that use of the term "Gunnison sage-grouse" was necessary to capture records such as the comments submitted by the U.S. Fish and Wildlife Service ("FWS") and Colorado Parks and Wildlife ("CPW") regarding the February 2017 lease sale.  *See* Docket No. 37 at 13-14; *see also* Docket No. 37-8 (FWS comments); Docket No. 37-9 (CPW comments).  However, plaintiff does not explain why the documents – both of which refer to the four-digit parcel numbers, *see* Docket No. 37-8 at 1; Docket No. 37-9 at 1 – would not have been uncovered by the search terms used by the BLM.

sale are organized by the parcel ID" and thus, "[t]o the extent a serial number may have been used in a given communication, . . . the parcel number would also have been included." *Id.* at 8, ¶ 30; *see also, e.g.*, Docket No. 37-5 at 14-38 (lease sale notice identifying parcels by their parcel IDs and serial numbers). Finally, Mr. Klein states that the Tres Rios Field Office and Colorado State Office Branch of Fluid Minerals completed its searches and sent all responsive documents to the state FOIA officer by November 4, 2016, before the BLM changed the lease sale to March 2017. *Id.* at 6, 8, ¶¶ 19, 27-28; *see also* Docket No. 37 at 6, ¶ 4. Accordingly, a search for documents related to the "March 2017 lease sale" would not have uncovered any records responsive to plaintiff's request.

In light of Mr. Klein's explanation, the Court rejects plaintiff's challenge to the BLM's search terms. *See Doyle v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 27, 55 (S.D.N.Y. 2018) (finding argument that search terms used by the agency were underinclusive for failure to "contain certain terms that Plaintiffs would have included" to be "precisely the sort of nit-picking that courts have rejected in the FOIA context"); *Coffey*, 277 F. Supp. 3d at 9 (rejecting similar challenge based, in part, on employee's declaration that the search terms actually used by the agency were "much broader" than the search term requested by the plaintiff).

### e. Temporal Scope

Plaintiff contends that the agency's failure to define a temporal scope for the search rendered it unreasonable. Docket No. 37 at 14. The Court agrees as to

defendants' failure to define a cut-off date for the search.[9]  While Mr. Klein clarifies in his supplemental declaration that each custodian searched for "records through the date of the search itself, not the date of the FOIA request," Docket No. 43-1 at 5, 8, ¶¶ 15, 27, defendants have provided no evidence that the BLM provided contemporaneous notice of its date-of-search cut-off date.[10]  Even now, Mr. Klein fails to specify the precise dates on which the custodians conducted their searches, stating only that all searches were "completed" by November 3, 2016.  *Id.* at 6, 8, ¶¶ 19, 27.

As the D.C. Circuit has stated, it is difficult for an agency to show that

> it may "reasonably" use *any* cut-off date without so informing the requester.  Such notification would involve an insignificant expenditure of time and effort on the part of the agency.  And it would enable the requester to submit supplementary demands for information if he felt so inclined.

*McGehee v. C.I.A.*, 697 F.2d 1095, 1105 (D.C. Cir. 1983), *vacated in part on other grounds on reh'g*, 711 F.2d 1076.  In *McGehee*, the court stated that the agency's

---

[9]To the extent plaintiff challenges the absence of a front-end cut-off date, Mr. Klein states in his declaration that the custodians' searches were not "time-limited." Docket No. 36-1 at 10, ¶ 26.  Although plaintiff disputes this fact on the basis that "FOIA searches are time-limited by statutory deadlines," Docket No. 37 at 4, ¶ 12, the statute plaintiff cites establishes the deadline by which an agency must respond to a FOIA request.  *See* 5 U.S.C. § 552(a)(6)(A)(i).  It does not address the requisite temporal scope of an agency's search.

[10]Department of the Interior regulations provide that, "[i]n determining which records are responsive to a request, the bureau will include only records in its possession and control on the date that it begins its search." 43 C.F.R. § 2.12(b).  At least one court has stated that notice of a search cut-off date "can be given constructively via published agency regulations." *Dayton Newspaper, Inc. v. Dep't of Veterans Affairs*, 510 F. Supp. 2d 441, 450 (S.D. Ohio 2007).  However, defendants do not advance any argument that the DOI regulation was sufficient to inform plaintiff of the BLM's search cut-off date in this case, especially in light of the that the BLM has not identified the actual dates on which the custodians conducted their searches.

"*unpublicized* temporal limitation of its searches should be held invalid" unless, on remand, the agency made an "extraordinary showing" as to why it was not required to inform the requester of the temporal scope of its records search. *Id.*; *see also Dayton Newspaper, Inc.*, 510 F. Supp. 2d at 449 ("Limiting a search by applying a cut-off date, without providing notice of the date to the requester, renders the search unreasoanble."). Defendants in this case have made no such showing and, as a result, have failed to meet their burden of demonstrating the reasonableness of a date-of-search cut-off date in this case. *See In Defense of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 83, 99 (D.D.C. 2008) (finding that defendants had not met their burden of demonstrating the reasonableness of their search cut-off date where they did not relay the cut-off date to the FOIA requester). The Court will therefore require the BLM to conduct a supplemental search for records through the date of the BLM's release of records on May 7, 2017. *See* Docket No. 36-1 at 30. Because plaintiff would have known that the BLM's search for records did not include any records created after that date, a supplemental search for records through May 7, 2017 is sufficient to place plaintiff in the same position it would have been in had the BLM properly disclosed the cut-off date at the time of its initial response to plaintiff's FOIA request. *See McGehee*, 697 F.2d at 1105 n.43 (stating, with respect to agency's unpublicized temporal limitation on search, that the general goal of any relief "should be to put the appellant . . . in the position he would have occupied had the agency acted reasonably"); *Dayton Newspaper, Inc.*, 510 F. Supp. 2d at 450-51 (ordering agency to conduct a supplemental search through the date of the agency's final decision on the plaintiffs'

31

FOIA request because, "at that point, Plaintiffs were put on notice that the [agency] was no longer searching for records").[11]

### 2. Exemption 5

Plaintiff challenges the BLM's withholding of documents under FOIA Exemption 5. *See* Docket No. 37 at 16. An agency withholding responsive records "bears the burden of demonstrating that [those records] fall into one of [FOIA's] enumerated exceptions," which the Court construes "narrowly in favor of disclosure." *World Publ'g Co.*, 672 F.3d at 826. FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Stated differently, the exemption "protects documents that would be covered by any privilege that an agency could assert in a civil proceeding." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007). Defendants assert two types of privilege as a basis for the BLM's withholding under Exemption 5: the deliberative process privilege and the attorney-client privilege. *See* Docket No. 36 at 15; Docket No. 36-2 at 2-23. The deliberate process privilege applies to "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks omitted).

_____

[11]Although the agency's final decision on plaintiff's FOIA request was issued on May 25, 2017, there is no indication in the DOI's determination on plaintiff's administrative appeal that the agency conducted an additional search for records after May 7, 2017. *See* Docket No. 36-1 at 41-45.

Documents are protected by the privilege if they are "both predecisional and deliberative." *Trentadue*, 501 F.3d at 1227. In other words, they must reflect "predecisional memoranda prepared in order to assist an agency decisionmaker in arriving at his decision" and be comprised of opinions and recommendations, as opposed to purely factual material. *Id.*[12]

The attorney-client privilege protects "communications between a client and an attorney, made in order to obtain or deliver legal assistance, that were intended by the participants to be confidential." *Luv N' Care, Ltd. v. Williams Intellectual Prop.*, No. 18-mc-00212-WJM-KLM, 2019 WL 2471318, at *2 (D. Colo. June 12, 2019); *see also Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 33 (D.D.C. 2011) (stating, in the FOIA context, that an agency seeking to withhold a document under the attorney-client privilege must show that the document "involves confidential communications between an attorney and his client" and "relates to a legal matter for which the client has sought professional advice"). The "mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995).

To substantiate its withholding under Exemption 5, the BLM has produced a *Vaughn* index, "a compilation prepared by the [BLM] listing each of the withheld

---

[12]*Trentadue* recognized that purely factual material may be exempt from disclosure under "certain narrow circumstances: when disclosure would so expose the deliberative process within an agency that it must be deemed exempted." 501 F.3d at 1228 (internal quotation marks omitted).

documents and explaining the asserted reason for its nondisclosure." *Hull v. I.R.S.*, 656 F.3d 1174, 1178 n.2 (10th Cir. 2011) (internal quotation marks and ellipsis omitted).  An agency's determination that particular documents fall within the scope of a FOIA exemption is generally accorded substantial weight if the agency's *Vaughn* index and accompanying declarations "are reasonably clear, specific, and detailed." *Rocky Mountain Wild, Inc.*, 138 F. Supp. 3d at 1223.  A *Vaughn* index is adequately detailed if it allows the Court "to determine whether a sufficient factual basis exists to support the agency's refusal to disclose the information at issue." *Id.*

Plaintiff challenges the BLM's withholding under Exemption 5 on three grounds. First, plaintiff argues that the BLM is not entitled to withhold documents under the attorney-client privilege because there is insufficient evidence demonstrating the withheld or redacted communications were intended to be confidential. *See* Docket No. 37 at 17-18.  Plaintiff specifically faults the BLM for failing to (1) conduct a search of all "employees included in the Attorney-Client control group" to determine whether the "communications were handled in a way that created and preserved attorney-client privilege"; or (2) "state whether there [was] any indication on the document itself or in the transmitting email that the content was subject to the attorney client privilege." Docket No. 37 at 17-18 (internal quotation marks omitted).  Second, plaintiff argues that the BLM was required to disclose NEPA correspondence between the BLM and the Forest Service pursuant to the NEPA exception to Exemption 5.  *Id.* at 19.  That exception requires an agency to "[m]ake environmental impact statements, the comments received, and any underlying documents available to the public pursuant to

the provisions of the [FOIA], without regard to the exclusion for interagency memoranda where such memoranda transmit comments of the Federal agencies on the environmental impact of the proposed action."  40 C.F.R. § 1506.6(f).  Finally, plaintiff contends that defendants' briefing and the *Vaughn* index are insufficiently detailed to demonstrate that all segregable information has been disclosed.  Docket No. 37 at 18-19.

### a. Attorney-Client Privilege

Plaintiff argues that the BLM cannot assert the attorney-client privilege because (1) it did not conduct a search of all "employees included in the Attorney-Client control group" to determine whether the "communications were handled in a way that created and preserved attorney-client privilege"; and (2) there is no indication that either the document itself or the transmitting email contained a notice "that the content was subject to the attorney client privilege."  Docket No. 37 at 17-18 (internal quotation marks omitted).  In other words, plaintiff suggests that the BLM has failed to carry its burden of showing that the records at issue were intended to be confidential.

Plaintiff does not offer any support for its suggestion that the BLM was required to "search the full list of employees included in the Attorney-Client control group" to determine whether the privilege was properly preserved.  Docket No. 37 at 17.  The index indicates that the communications at issue occurred between BLM personnel and the agency's attorney "in the course of the parties' attorney-client relationship and for the purpose of giving and receiving legal advice."  Docket No. 36-2 at 15 (Bates Number 890-983); *see also id.* at 8 (Bates Number 266), 15 (Bates Number 884-889);

Docket No. 36-1 at 14, ¶ 44 (Klein declaration stating that the communications occurred "between BLM personnel and the agency's attorney . . . in the course of giving and receiving legal advice").  The index reflects either emails sent on a single day or, in the case of one document, emails exchanged during a two-week period.  Docket No. 36-2 at 8, 15.  The index does not list the documents again as having been distributed and there is no suggestion that any of the recipients were third parties.  As a result, the Court rejects the argument that the defendants have failed to demonstrate the documents were intended to be confidential.  *See Rocky Mountain Wild v. U.S. Bureau of Land Mgmt.*, 18-cv-00314-WJM-STV, 2020 WL 1333087, at *15 (D. Colo. Mar. 23, 2020) (in determining exemption regarding attorney-client privilege, there is no reason to believe persons named in the email were not BLM employees).  The Court finds that defendants are entitled to summary justment on this issue.[13]

### b.  NEPA Exception

Plaintiff challenges the BLM's withholding of correspondence between BLM and the Forest Service on the ground that those communications fall within the NEPA exception to Exemption 5.  Docket No. 37 at 19.  Defendants respond that the NEPA exception does not apply because the redaction plaintiff cites does not involve an

---

[13]Regarding the BLM's withholding of records under Exemption 5, plaintiff also argues that the BLM's "failure to justify [the] change in justification within" the document bate stamped 890-983 "is a genuine issue that must be resolved."  Docket No. 37 at 17, n.8.  The Court does not understand this argument.  Plaintiff does not appear to assert that the BLM has failed to establish the elements of the claimed exemptions.  And, as defendants argue in their reply, the fact "[t]hat one portion of the document also contain[s] deliberative material is immaterial to the applicability of Exemption 5 over the draft."  Docket No. 43 at 12, n.4.

"environmental impact statement, a comment received about an environmental impact statement, or an underlying document."  Docket No. 43 at 11, n.3.  The Court agrees. As explained in defendants' reply and in the *Vaughn* index, the document at issue is "a portion of an email" between BLM and Forest Service employees concerning suggested edits to a draft DNA.  Docket No. 43 at 11, n.3; Docket No. 36-2 at 2.  A DNA is neither an environmental impact statement nor a document underlying an EIS.[14] Instead, a DNA presupposes – and relies upon – the existence of an EIS in "confirm[ing] that an action is adequately analyzed in existing NEPA document(s)." *Friends of Animals*, 2018 WL 1612836, at *9; *see also* Docket No. 43-2 at 3-4, ¶ 7 (explaining that when "there is a current . . . RMP in place," the NEPA process for an agency action "primarily encompasses . . . a [DNA]," which "confirms that the proposed leasing action is in conformance with the approved RMP").  The NEPA exception therefore does not apply.  *Cf. Info. Network for Responsible Mining (Inform)*, 611 F. Supp. 2d at 1187 (holding, based on the plain language of the regulation, that the NEPA exception to Exemption 5 did not extend to a programmatic environmental assessment, which is distinct from an EIS).

### c. Segregability

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided

---

[14]An environmental impact statement is defined as "a detailed written statement as required by section 102(2)(C) of [NEPA]."  40 U.S.C. § 1508.11.  NEPA's implementing regulations provide that an EIS "shall provide full and fair discussion of significant environmental impacts and shall inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment."  40 C.F.R. § 1502.1.

to any person requesting such a record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency is required to "provide a reasonably detailed justification rather than conclusory statements to support its claim that the non-exempt material in a document is not reasonably segregable." *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 140 (D.D.C. 2008) (quoting *Mead Data Cent. Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)). At a minimum, an explanation should "detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Id.*

Plaintiff asserts that the BLM's *Vaughn* index is insufficiently detailed to show that all reasonably segregable information has been disclosed. Docket No. 37 at 18.[15]

---

[15]The Court reads the argument in this section of plaintiff's response brief as being limited to the issue of segregability. *See* Docket No. 37 at 18-19 (labeling section "Reasonably Segregable Factual Information Is Being Withheld" and asserting that, because the *Vaughn* index did not provide a "detailed analysis and explanation of redactions in each document," it did not justify the agency's decision to withhold the documents "*en masse*"); *see also* Docket No. 43 at 12-13 (interpreting argument as relating only to issue of segregability). To the extent plaintiff's argument could also be construed as challenging the sufficiency of the *Vaughn* index to enable de novo review of the FOIA exemptions being claimed by the BLM, *see, e.g.*, *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, No. 15-cv-0127-WJM-CBS, 2016 WL 362459, at *9 (D. Colo. Jan. 29, 2016) (considering whether *Vaughn* index was sufficient to establish applicability of Exemption 5), plaintiff does not specify what information it believes to be missing from the index other than to say that defendants' briefing and the *Vaughn* index merely "parrot the statutory standard." Docket No. 37 at 18 (emphasis omitted). The Court disagrees with this contention. For each document withheld, the BLM's *Vaughn* index identifies the date of the document, the author(s) and recipient(s) of the document, and the specific exemption being claimed. *See generally* Docket No. 36-2. The index also describes, with reasonable detail, the nature of each document and the reasons for the claimed exemption. *See id.* Thus, in the absence of a more particularized argument by plaintiff, *see, e.g.*, *Judicial Watch, Inc.*, 20 F. Supp. 3d at 258 (addressing argument that the "narrative justifications" in the agency's *Vaughn* affidavit "fail[ed] to articulate the necessary elements of each of the three privileges upon which the [agency] purport[ed] to rely"), and with the exception of the confidentiality and segregability

The Court agrees.  Based on the *Vaughn* index, it appears that almost all of the records subject to withholding under Exemption 5 were withheld in full.  *See generally* Docket No. 36-2.  Yet defendants have made no effort to describe what proportion of those documents consists of non-exempt information, how that information is dispersed throughout the documents, or why the documents could not have been disclosed in redacted form.  *See Barnard*, 531 F. Supp. 2d at 140.

While defendants correctly note that an agency may satisfy its segregability burden by providing a *Vaughn* index describing the documents withheld and agency declarations attesting to the disclosure of all segregable information, *see, e.g.*, *Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008) (noting that "the district court relied on the very factors we have previously deemed sufficient for [the segregability] determination, i.e., the description of the document set forth in the *Vaughn* index and

---

issues addressed elsewhere in this order, the Court does not find the BLM's *Vaughn* index patently deficient.  *Compare Judicial Watch, Inc.*, 20 F. Supp. 3d at 257-58 (rejecting argument that the agency's *Vaughn* index was insufficient due to its use of "buzz words," such as "internal deliberation," "suggested revisions," and "draft brief," to describe the documents withheld), *and Info. Network for Responsible Mining (Inform) v. Dep't of Energy*, No. 6-cv-02271-REB-CBS, 2008 WL 762248, at *5 (D. Colo. Mar. 18, 2008) (rejecting argument that agency's declarations and *Vaughn* index were impermissibly vague, conclusory, and categorical where they "identif[ied] specifically each document withheld, state[d] specifically the statutory exemption claimed, and explain[ed] specifically how disclosure would damage the interests protected by the claimed exemption"), *with Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 238-42 (D.D.C. 2013) (finding *Vaughn* index inadequate where it failed to identify the authors and recipients of the documents and provided vague and categorical summaries that applied to multiple documents); *see also Judicial Watch, Inc.*, 20 F. Supp. 3d at 255 (stating that, in the D.C. Circuit, a *Vaughn* index must generally "describe each withheld document or deletion," "state the exemption claimed for each deletion or withheld document," and "explain why the exemption is relevant").  The Court notes, however, that the *Vaughn* index will need to include additional information to satisfy the BLM's segregability burden, as discussed below.

the agency's declaration that it released all segregable material"); *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (finding the combination of a "comprehensive *Vaughn* index, describing each document withheld," and affidavits explaining that the agency employee "personally conducted a line-by-line review of each document withheld in full and determined that no document contained releasable information which could be reasonably segregated" sufficient to sustain the agency's burden on summary judgment), the case law does not permit agencies to withhold responsive material based on a blanket assertion that the material "was reviewed by [the agency] to ensure that all reasonably segregable information [was] released." Docket No. 36-1 at 12, ¶ 37; *see Ctr. for Biological Diversity v. U.S. Envtl. Protection Agency*, 279 F. Supp. 3d 121, 152 (D.D.C. 2017) (holding agency's "blanket declaration" that there was "no additional segregable information" insufficient because it did not "show with reasonable specificity why the documents [could not] be further segregated and additional portions disclosed"); *Stolt-Nielsen Transp. Group Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) (holding conclusory assertion that agency paralegal had "reviewed each page line-by-line to assure himself that he was withholding from disclosure only information exempt pursuant to the Act" insufficient to justify agency's withholding of records).  Here, neither the *Vaughn* index nor Mr. Klein's declarations are sufficiently detailed to carry the agency's burden as to segregability. The Court will therefore deny defendants' motion for summary judgment on this issue. Defendants are directed to provide an updated *Vaughn* index and supplemental declaration explaining, with respect to each document, what proportion of the document

is being withheld and "why nonexempt material cannot be segregated." *Ctr. for Biological Diversity*, 279 F. Supp. 3d at 152-53; *see also Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 952 (10th Cir. 1990) (indicating that a court may "order[] supplementation of the *Vaughn* index" when the existing index is insufficient).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 36] is **GRANTED** in part and **DENIED** in part as stated in this order.  It is further

**ORDERED** that plaintiff's Cross Motion for Summary Judgment or in the Alternative, Leave to Carry Out Rule 56(d) Discovery [Docket No. 38] is **GRANTED** in part and **DENIED** in part as stated in this order.  It is further

**ORDERED** that, within forty-five days of this order, the BLM shall conduct a supplemental search for records, using a search cut-off date of May 7, 2017, that includes any records held in the BLM's Washington, D.C. office.  The BLM shall review any newly identified responsive documents to determine whether they are exempt from disclosure under the standards recited in this order.  Any responsive documents the BLM considers to be exempt from disclosure should be included in a revised *Vaughn* index submitted to the Court.  It is further

**ORDERED** that the BLM's revised *Vaughn* index shall also provide sufficient information to allow the Court to determine (1) whether the BLM has properly withheld records under the attorney-client privilege, and (2) whether all reasonably segregable material contained in documents exempt from disclosure under any FOIA exemption

has been disclosed.  Defendants shall file the BLM's revised *Vaughn* index, and any accompanying declarations, within thirty days of completing the supplemental search for records ordered above.

DATED April 22, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge